UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

L&H, INC.,

        Plaintiff,

  -v-                              No.  24-CV-06425-LTS

CHIJET MOTOR COMPANY, INC., and
EQUINITI TRUST COMPANY, LLC,

        Defendants.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

L&H, Inc. ("L&H" or "Plaintiff") brings this action against Chijet Motor Company, Inc. ("Chijet") and Equiniti Trust Company, LLC ("Equiniti" and, together, "Defendants"), asserting claims related to Defendants' purported breach of two contracts.  The Court has jurisdiction of this action under 28 U.S.C. section 1332.

Pending before the Court is Defendant Equiniti's motion to dismiss the claims brought against it in Plaintiff's Amended Complaint (docket entry no. 21 (the "Amended Complaint" or "Am. Compl.")) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  (Docket entry no. 37 ("Motion").)  The Court has reviewed the parties' submissions thoroughly and, for the following reasons, Equiniti's Motion is granted.

I.       BACKGROUND

The following facts are drawn from the Amended Complaint and the exhibits attached to Equiniti's Motion (docket entry nos. 38-2 (the "Business Combination Agreement"

or "BCA"), and 38-1 (the "Contingent Value Rights Agreement" or "CVRA")) and are presumed true for the purposes of this Motion to the extent that they are well-pleaded.

On October 25, 2022, Defendant Chijet, a Cayman Islands exempted company with its principal place of business in China, entered into a Business Combination Agreement with the following entities or individuals: Jupiter Wellness Acquisition Corporation ("Jupiter"), a special purpose acquisition company; Chijet Motor (USA) Company, Inc.; Chijet, Inc. ("Target"); all holders of outstanding capital shares in Target; and Chijet CEO Hongwei Mu. (Am. Compl. ¶¶ 6, 13; see also BCA.)  As relevant here, the overarching goal of the BCA was to enable Chijet to be listed on the U.S. stock exchange without undergoing an initial public offering; Chijet would achieve listed status via a reverse merger.  (Am. Compl. ¶¶ 13-17.)  L&H is a shareholder in Jupiter.  (Id. ¶ 18.)

On May 1, 2023, L&H entered into a non-redemption agreement with Chijet, Jupiter, and another entity, Chijet Holdings Limited.  (Id.)  Under this agreement, L&H waived its right to dispose of its 189,973 shares of Class A common stock of Jupiter by any method.  (Id. ¶¶ 19-21.)  In exchange, Chijet was obligated to provide certain "down-side protections" to L&H.  (Id. ¶ 21.)  As relevant here, if the stock price fell below specific price floors, a "Trigger Event" would occur, which would obligate Chijet to issue new Chijet Ordinary shares to L&H and to register those shares with the SEC within thirty days.  (Id. ¶¶ 22-23.)

A Trigger Event occurred on June 23, 2023 when Chijet's stock price fell below the price floor; this event required Chijet to register with the SEC a total of 379,946 shares for L&H.  (Id. ¶¶ 25-26.)  Chijet failed to register those shares, and the stock price of Chijet subsequently plummeted, causing L&H to suffer the financial loss giving rise to this litigation. (Id. ¶¶ 27-28.)

L&H – MTD                                      MARCH 31, 2026                                      2

At issue in the present Motion is Plaintiff's breach of contract claim against Equiniti, a New York limited liability company with its principal place of business in New York. (Id. ¶ 7.)  All of the interests in the company are held, indirectly, by a Delaware corporation that has its principal place of business in New York.  (Id.)  On June 1, 2023, Equiniti and Chijet entered into the CVRA, which tasked Equiniti with maintaining a register of Contingent Value Rights ("CVR") Holders' rights and effectuating transfers of those rights when mandated under the CVRA and certain portions of the BCA.  (Id. ¶ 35.)[1]  CVR Holders are shareholders who are entitled to receive payments of Chijet shares upon the occurrence of Trigger Events as outlined in the CVRA or BCA.  (Id. ¶ 32.)  Section 5.3 of the CVRA provides that CVR Holders are "express third party beneficiaries" with the power to enforce the rights expressly granted to them in the CVRA.  (CVRA § 5.3.)  L&H is a CVR Holder.  (Am. Compl. ¶ 32.)

Plaintiff alleges that Equiniti violated two sections of the CVRA—Sections 2.4 and 3.1.  Section 2.4 outlines the multi-step "Procedures for Satisfaction of CVRs."  (CVRA § 2.4.)  As relevant here, this section outlines a four-step process for CVR Holders to receive certain shares, called CVR Property, if Chijet's annual gross revenue fell below targets detailed in Section 2.3 of the BCA.  (Id. § 2.4(a); Am. Compl. ¶ 34.)  First, specific sellers under the BCA called "Earnout Participants" were required to forfeit their Chijet shares, which would then be reissued by Chijet as Ordinary shares.  (Am. Compl. ¶ 34.)[2]  Second, within ten business days of the determination that the CVR Property was owed, Chijet had to deliver a formal written

---

[1]    Plaintiff alleges that the BCA and CVRA are to be read "in conjunction."  (Am. Compl. ¶ 34.)  While this may be so for Chijet, which was a party to the BCA, the CVRA limits Equiniti's required knowledge of and obligation to comply with the BCA to only those portions "expressly incorporated" into the CVRA (CVRA § 3.2(n)).

[2]    Those Earnout Participants were Euroamer Kaiwan Technology Company Limited and Chijet Holdings Limited.

notice to Equiniti (the "CVR Payment Notice" or "Notice").  (Id. ¶ 38.)  That CVR Payment Notice was to tell Equiniti how many shares the Earnout Participants had surrendered and how many newly reissued shares each CVR Holder should receive.  (CVRA § 2.4(a).)  Third, Chijet then had to deliver the CVR Property to Equiniti, which was required to distribute it to CVR Holders.  (Id.)  And fourth, Chijet had to issue a public press release.  (Id. § 2.4(a), (d); see also BCA § 2.3(d).)

Section 3.1 of the CVRA consists of just one sentence: "[Equiniti] will not have any liability for any actions taken or not taken in connection with this Agreement, except to the extent of its willful misconduct, bad faith or gross negligence (each as determined by a judgment of a court of competent jurisdiction)."  (CVRA § 3.1; Am. Compl. ¶ 35.)

## II.     DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id. (citation omitted), but a complaint that contains only "naked assertion[s]" or "a formulaic recitation of the elements of a cause of action" does not suffice, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff."  Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017) (citation omitted).

Plaintiff asserts a single breach of contract claim against Equiniti.  To state a claim for breach of contract under New York law, a plaintiff must allege: "(1) the existence of an

agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Ellington Credit Fund Ltd. v. Select Portfolio Servicing Inc., 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)).[3] Equiniti contests only the third element, breach. The Court will take each of contractual provisions that Equiniti allegedly breached in turn.

A.     Section 2.4 of the CVRA

As explained above, Section 2.4 of the CVRA details the multi-step "Procedures for Satisfaction of CVRs" following a Trigger Event. (CVRA § 2.4.) Equiniti argues that the Amended Complaint fails to allege the occurrence of two of those steps—issuance of the CVR Payment Notice and the delivery of CVR Property—and argues that this failure renders the Amended Complaint insufficient to state a viable claim for breach of contract. (Docket entry no. 39 ("Def. Mem.") at 5.) Defendant argues, and Plaintiff agrees, that Equiniti's contractual obligations under Section 2.4 are not triggered until Equiniti receives the CVR Payment Notice. (Id. at 9; docket entry no. 46 ("Opposition" or "Pl. Mem.") at 6 ("[I]t is true that Equiniti must receive a CVR Payment Notice from Chijet informing Equiniti that the time to release the CVR shares to the CVR Holders had come to pass . . . .").) Equiniti also argues that it cannot distribute the CVR Property until it actually receives that property (Def. Mem. at 9), an argument that Plaintiff's Opposition concedes. According to Equiniti, "[w]ithout receipt of the CVR Payment Notice and applicable CVR Property from Chijet, Equiniti had no obligation (or even any right or ability) to effect the issuance of earnout shares under the CVRA." (Def. Mem. at 9.)

---

[3]     New York law applies here because the CVRA contains a forum selection clause which specifies that New York law governs "all disputes or controversies arising out of or relating to" the CVRA. (CVRA § 5.4(a).)

Defendant is correct that Plaintiff cannot state a viable claim for breach of Section 2.4 of the contract unless Plaintiff plausibly alleges that Equiniti received the CVR Payment Notice and received the CVR Property. Both are "condition[s] that must be satisfied before [Equiniti's] duty to perform arises"—in other words, conditions precedent. See Insured Advoc. Grp., LLC v. Spartan Servs. Corp., No. 23-CV-07212-LJL, 2024 WL 3429131, at *6 (S.D.N.Y. July 16, 2024), on reconsideration in part, 2024 WL 3876486 (S.D.N.Y. Aug. 20, 2024). If Plaintiff did not plausibly allege that the conditions precedent occurred, it cannot establish that Equiniti's duty to perform has arisen under the CVRA nor that Equiniti breached the CVRA. See Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."); see also O.F.I. Imports Inc. v. Gen. Elec. Cap. Corp., No. 15-CV-7231-VEC, 2017 WL 3084901, at *5-6 (S.D.N.Y. July 20, 2017) (applying the plausibility pleading standard to pleadings regarding conditions precedent).

Plaintiff's Opposition offers two arguments that Equiniti received notice sufficient to trigger its obligations under Section 2.4. Neither argument has any basis in the Amended Complaint, nor is either persuasive.

First, Plaintiff argues that because "only Equiniti has firsthand knowledge" of whether it received a CVR Payment Notice as required under Section 2.4, Plaintiff's claim should proceed to discovery. (Pl. Mem. at 6.) Plaintiff cited no supportive caselaw for this proposition. When "facts are peculiarly within the possession and control of the defendant," the Second Circuit permits plaintiffs to plead facts "alleged upon information and belief," Arista Recs., LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quote cleaned up), but the Amended Complaint fails to do even that. The Amended Complaint merely alleges, on information and belief, that "Equiniti was aware" that Chijet missed the relevant gross revenue targets (Am.

Compl. ¶ 44), but this does not plausibly establish that Equiniti received the formal CVR Payment Notice that would trigger its obligations under the CVRA (see CVRA § 5.1).  Courts in this Circuit facing comparable situations have granted motions to dismiss on this basis.  See, e.g., Shaw v. Hornblower Cruises & Events, LLC, No. 21-CV-10408-VM, 2022 WL 16748584, at *7 (S.D.N.Y. Nov. 7, 2022).

Second, Plaintiff points to a press release issued by Chijet on September 20, 2024, concerning a CVR distribution (docket entry 45-2 (the "Press Release")), arguing that it supports an inference that Equiniti received the requisite CVR Payment Notice, even though the Press Release was neither mentioned nor incorporated by reference in the Amended Complaint.

Typically, a court evaluating a Rule 12(b)(6) motion may consider only "facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  While Plaintiff concedes that the press release was neither attached to the Complaint as an exhibit nor incorporated by reference in the Amended Complaint, Plaintiff argues that the Court should nonetheless consider it.  Plaintiff first argues that the Court should consider the Press Release because it is "integral to the complaint and the complaint relies on the effects of this press release."  (Pl. Mem. at 4 n.2 (citing Madhu v. Socure Inc., 693 F. Supp. 3d 405, 417 (S.D.N.Y. 2023)).)  Documents "integral to the complaint" may be considered when deciding a motion to dismiss, see Lynch v. City of New York, 952 F.3d 67, 79 (2d Cir. 2020), but Plaintiff fails to show that the Press Release is integral to its Amended Complaint.

Plaintiff's own cited case, Madhu, is illustrative of which circumstances indicate that a document is integral to a pleading and which do not.  In that case, the court found that text messages which were "paraphrased and directly quoted in the Amended Complaint" were

L&H – MTD                                  MARCH 31, 2026                                  7

integral to the complaint, whereas other documents to which the complaint did not "specifically refer" were not. Madhu, 693 F. Supp. 3d at 417. Here, the Press Release falls in the latter category—Plaintiff's Opposition did not cite, nor has the Court itself found, any allegations in the Amended Complaint pertaining to the Press Release or its effects. The Court therefore declines to consider the Press Release as integral to the Amended Complaint.

Plaintiff also argues that Equiniti's Motion papers "purposely fail[] to include the portion" of Section 2.4(a) of the CVRA about press releases and argues that "[t]his clear omission by Equiniti necessitates L&H directly citing to the press release." (Pl. Mem. at 6.) Plaintiff provided no case law to support its theory that language in Defendant's Motion papers would allow Plaintiff to retroactively expand the scope of its Amended Complaint through its Opposition. See Willard v. UP Fintech Holding Ltd., 527 F. Supp. 3d 609, 620 n.6 (S.D.N.Y. 2021) ("[I]t is well-settled that a claim for relief may not be amended by the briefs in opposition to a motion to dismiss." (citations omitted)). Even if Plaintiff had provided such support, moreover, Plaintiff's argument fails as a factual matter: Defendant's Motion papers include the very language of the CVRA that Plaintiff claims Defendant "purposely" omitted. (Def. Mem. at 6.)

Furthermore, even if the Court were to consider the Press Release and Plaintiff's belated arguments about it, Plaintiff still would not have plausibly plead a breach. While Plaintiff admits that Equiniti's contractual obligations trigger only upon Equiniti's receipt of the CVR Payment Notice, Plaintiff argues that the Press Release either proved the Notice occurred or, alternatively, supplanted that Notice. (Pl. Mem. at 7, 11.) Neither argument holds water. Plaintiff's first argument—that the "the public press release could not have been issued in advance of the CVR Payment Notice" (id. at 7)—does not follow logically from the language of

the contract.  As explained above, it is true that a Press Release must occur after the issuance of a CVR Payment Notice.  However, that does not mean that a Press Release can <u>only</u> be issued after a CVR Payment Notice.  Plaintiff's argument thus is based upon mere speculation that the Press Release followed a CVR Payment Notice and is not entitled to a presumption of truth nor a reasonable inference.  As to the second argument, the CVRA itself forecloses Plaintiff's theory that a public Press Release could "effectively serve" as the CVR Payment Notice.  (<u>Id.</u> at 11.) The CVRA states explicitly that all Notices must follow a detailed procedure (CVRA § 5.1), which Plaintiff's Opposition and Amended Complaint both acknowledge (Pl. Mem. at 6; Am. Compl. ¶ 38).

In sum, Plaintiff's Amended Complaint fails to allege plausibly that Equiniti received the CVR Payment Notice or CVR Property as required under Section 2.4 of the CVRA. At most, Plaintiff has alleged that Equiniti was aware that <u>Chijet</u> had an obligation to initiate the Earnout Share process.  (<u>See, e.g.</u>, Am. Compl. ¶¶ 41, 44-46.)  But standing alone, this sort of knowledge could not trigger Equiniti's legal duties under the CVRA, which expressly provided that Equiniti "shall incur no liability for failing to take action in connection" with "any event of which it was supposed to have received notice," "unless and until it has received such notice in writing."  (CVRA § 3.2(k).)  Because Plaintiff failed to plead the occurrence of the conditions precedent that would trigger Equiniti's contractual obligations, Plaintiff fails to establish that Equiniti's duties were triggered under this section and thus fails to establish breach.

B.      Section 3.1 of the CVRA

Plaintiff also argues that Equiniti breached Section 3.1 of the CVRA.  As explained above, this provision does not embody any contractual undertaking by Equiniti but, rather, relieves Equiniti of liability under the contract "except to the extent of its willful

misconduct, bad faith or gross negligence." (CVRA § 3.1.) Section 3.1 is an exculpatory clause, so Plaintiff's claim that Equiniti "fail[ed] to live up to its contractual obligations" under this Section is illogical. (Pl. Mem. at 7; see also Am. Compl. ¶ 35.) Furthermore, the exculpatory clause contained in Section 3.1 provides an independent basis to grant Equiniti's motion to dismiss. Plaintiff does not contest the validity of the exculpatory clause, which clearly is enforceable under New York law. See Corinno Civetta Constr. Corp. v. City of New York, 493 N.E.2d 905, 909-10 (N.Y. 1986) (explaining that an exculpatory clause is valid if "the clause and the contract of which it is a part satisfy the requirements for the validity of contracts generally"). Rather, Plaintiff argues that Equiniti's actions met the bad faith and gross negligence standards.[4] Plaintiff's arguments in this regard are unavailing.

"In the context of contractual limitations on liability, [g]ross negligence [in New York] is defined as conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing. To constitute gross negligence, the act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care." Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc., 786 F. Supp. 2d 798, 807 (S.D.N.Y. 2011) (internal quotations omitted). And "bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract." CBLPath, Inc. v. Lexington Ins. Co., 73 A.D. 3d 829, 830 (N.Y. App. Div., 2nd Dep't 2010) (quoting Gordon v. Nationwide Mut. Ins. Co., 285 N.E.2d 849, 854 (N.Y. 1972)). The bad faith standard "requires more than mere negligence." Safeco

---

[4]    Plaintiff appears to concede that there was no willful misconduct here, so the Court will not assess that aspect of Section 3.1. (Pl. Mem. at 8 ("While willful misconduct is also included as part of Section 3.1 of the CVR Agreement, Equiniti only needs to act with gross negligence or bad faith in order to breach.").)

L&H – MTD                                   MARCH 31, 2026                                          10

Ins. Co. of Am. v. M.E.S., Inc., No. 09-CV-3312-PKC-VMS, 2017 WL 1194730, at *16 (E.D.N.Y. Mar. 30, 2017), aff'd, 910 F.3d 705 (2d Cir. 2018).

Nothing in Plaintiff's Amended Complaint or Opposition gives rise to a plausible inference of bad faith or gross negligence.  Plaintiff speculates that Equiniti was aware that Chijet failed to meet revenue requirements, triggering Chijet's obligation to initiate the Earnout Share process, and then argues conclusorily that Equiniti acted with gross negligence or bad faith by failing to release the CVR Property despite its awareness of this Trigger Event.  (Am. Compl. ¶¶ 35, 44-47.)  Even if the Court were to assume, arguendo, that Equiniti's contractual obligations had been triggered (an unwarranted assumption, as explained above), Plaintiff's allegations would demonstrate only an ordinary breach.  Nothing in the Amended Complaint or Plaintiff's arguments suggests that Equiniti's actions "smack of intentional wrongdoing" or constitute an "extraordinary showing of a disingenuous or dishonest failure."  Am. Auto. Ins. Co., 786 F. Supp. 2d at 807 (internal quotations omitted); CBLPath, 73 A.D. 3d at 830 (internal quotations omitted).  Were the Court to adopt Plaintiff's position, the exculpatory clause would be rendered meaningless.  This further justifies granting Equiniti's motion to dismiss.[5]

### III.    CONCLUSION

For the foregoing reasons, Defendant Equiniti's motion to dismiss is granted. Should Plaintiff desire to amend its complaint a second time, it may seek leave to do so within **thirty days** of the issuance of this Memorandum Opinion and Order.  If Plaintiff fails to move to

---

[5]    The judge presiding over an allegedly related case recently reached the same conclusion and granted Equiniti's motion to dismiss on this basis.  See Greentree Fin. Grp., Inc. v. Chijet Motor Co., Inc., No. 24-CV-6415-VEC, 2025 WL 2171799, at *4 (S.D.N.Y. July 30, 2025) (dismissing the plaintiff's claim against Equiniti with prejudice); (see also docket entry nos. 12 (statement of relatedness identifying Greentree as a related case), and 17 (same).)

amend by that time, this Amended Complaint will be dismissed with prejudice as against

Equiniti, without further advance notice.  This Memorandum Opinion and Order resolves docket

entry no. 37.


SO ORDERED.

Dated: New York, New York
        March 31, 2026


/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge